

**SO ORDERED.**

**SIGNED this 01 day of November, 2010.**

_____
**JOHN T. LANEY, III
CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| Eddie Ballard, Jr. | ) | |
| Maggie Ballard | ) | Chapter 13 |
|    Debtors. | ) | Case No. 10-71415 |
| | ) | |
| Eddie Ballard, Jr. | ) | |
| Maggie Ballard | ) | |
|    Movants. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Freedom Auto Plaza | ) | |
|    Respondent. | ) | |

**Memorandum Opinion**

This contested matter is before the court on a motion for turnover of property filed by debtors Eddie and Maggie Ballard. The motion is asking the court to rule that the

vehicle should be turned over to the debtors and actual and punitive damages should be awarded to the debtor based on violation of the automatic stay pursuant to section 362 of the bankruptcy code On September 29, 2010, the court heard oral arguments on the motion. At the conclusion of the hearing, the court took the matter under advisement and permitted parties to file letter briefs. The debtors filed a letter brief on October 06, 2010. Freedom Auto Plaza filed a reply brief on October 13, 2010. After considering the briefs submitted by the respective parties, arguments of counsel, and the pertinent statutory and case law, the court, for the reasons given below, determines that the motion for turnover of property should be granted.

**Facts**

In May 2010, Mr. Ballard purchased a 1996 International truck to use in his trucking business. Shortly after purchasing the truck, Mr. Ballard attempted to enter into a forbearance agreement with his mortgage company in order to stop foreclosure of his residence. The mortgage company required a certain lump sum of money to consider forbearance. On August 10, 2010, Mr. Ballard went to Freedom Auto Plaza to borrow money to pay the mortgage company. Mr. Ballard borrowed approximately $2,500.00 from Freedom Auto Plaza. Initial discussions between the parties presumed the transaction would be a Title Pawn transaction involving the debtor's 1996 International truck. Upon discovering that the debtor could not provide proof of insurance on the vehicle, and because the debtor wanted to maximize his loan amount, the parties agreed to restructure the transaction as a Possession Pawn transaction. The vehicle was to remain in possession of the creditor until insurance was provided. Upon receipt of insurance, the creditor would release the truck to Mr. Ballard. To date, the creditor still maintains possession of the 1996 International truck.

Mr. Ballard filed for protection under Chapter 13 of the bankruptcy code on September 3, 2010. A plan was filed with the petition. In the petition, the debtor listed a debt owed to Freedom Pawn in the amount of $2500. The 1996 International was listed as collateral for the loan. After filing, Mr. Ballard realized that the wrong creditor was listed and an address correction was filed on September 10, 2010 listing the creditor as Freedom Auto Plaza. In Mr. Ballard's Chapter 13 plan, the debt was to be paid in full at 6.5% over the life of the plan. The Chapter 13 plan was filed with the petition. Counsel for Mr. Ballard notified the creditor of the bankruptcy via fax and phone on September 7, 2010. On September 10, 2010, Freedom received notice of the Chapter bankruptcy filing from the bankruptcy court. Debtor claims that proof of insurance was faxed to Freedom on September 7, 2010. Creditor disputes this for the first time in the letter brief submitted to the court. Because no evidence was offered to dispute Mr. Ballard's testimony that the insurance was faxed on September 7, 2010, the court finds that the creditor received proof of insurance on such date.

## Conclusions of Law

**A. The contract between Mr. Ballard and Freedom Auto Plaza is not a valid pawn transaction; however, it was the intention of the parties to loan money in exchange for a security interest in the vehicle.**

In <u>Johnson v. Speedee Cash of Columbus</u>, 289 B.R. 251 (Bankr. M.D. Ga), this court visited the issue of the validity of title pawn transactions under state law. In <u>Johnson</u>, debtor entered into a pawn contract with the creditor. The debtor filed a Chapter 13 bankruptcy that was later dismissed. Subsequent to dismissal, the creditor repossessed the vehicle. After repossession, debtor filed a second Chapter 13 bankruptcy and an adversary proceeding for turnover of the vehicle. This court held that the statutes that

governs pawn transactions are to be strictly construed since such statutes are in conflict with the codified common law. See Johnson at 254. Since the contract in Johnson violated the statutes governing pawn transactions, the creditor was not entitled the benefits and protections of a typical title pawn transaction.

In the instant case, the contract between the creditor and Mr. Ballard violates O.C.G.A. § 44-14-403(b)(1), which states:

> There shall be a grace period on all pawn transactions. On pawn transactions involving motor vehicles or motor vehicle certificate of title, the grace period shall be 30 calendar days . . .

On page 4 of the contract, the second paragraph states: "Grace Period – THERE IS NOT ONE." The creditor insists that this part of the contract is merely a courtesy disclosure statement offered to the debtor. This argument is without merit. The heading clearly states "Additional Terms- Facts – Policies, and Conditions." The document also required the debtor's signature at the bottom. Taking these facts into consideration, the Additional Terms addendum is obviously part of the agreement between the debtor and Freedom. In cases in which the construction of the contract is ambiguous, the ambiguity is construed against the party preparing it. See Hertz Equip. Rental Corp. v. Evans, 260 Ga. 532, 397 S.E.2d 692 (1990).

However, this does not invalidate the contract as a whole. The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction. John K. Larkins, Georgia Contracts: Law and Litigation §9-2 (2010). The primacy of intent is

such that it will control " 'mere literal repugnancies in different clauses of the [agreement]' "and will permit the "transposing [of] words and sentences to the point of ignoring minor clauses." Benedict v. Snead, 271 Ga. 585, 519 S.E.2d 905 (1999) (alteration in original) (quoting Keith v. Chastain, 157 Ga. 1, 121 S.E. 233 (1923)); McVay v. Anderson, 221 Ga. 381, 385, 144 S.E.2d 741 (1965). The evidence clearly shows that the intent of the parties was to enter into a loan transaction in which the creditor would take a security interest in the possessed collateral.

However, as in Johnson, pawn brokers must strictly comply with the requirements of the Georgia Pawnbroker Act to be entitled to its protections. Accordingly, the creditor will not be afforded the benefit of a typical title or possessory pawn transaction in which the title automatically vests in the pawn broker at the end of the 30-day grace period.  Because an ownership interest in the property never transferred to the creditor, the debtor still has an ownership interest in the property; thus, the 1996 International is deemed property of the bankruptcy estate.

**B. Freedom Auto Plaza's interest in the 1996 International Truck is adequately protected.**

In In re Littleton, this court discussed the issue of adequate protection in the context of a creditor seeking relief from the automatic stay when the creditor was ordered to turnover collateral to the debtor. 220 B.R. 710 (Bankr. M.D. Ga. 1998). In Littleton, the creditor repossessed the debtor's vehicle. Debtor filed a Chapter 13 bankruptcy before the creditor had disposed of the vehicle. In the debtor's Chapter 13 plan, debtor proposed to pay the debt at the contract rate of interest. The creditor subsequently refused to turnover the vehicle. Debtor brought an adversary proceeding

for turnover. This court held that the vehicle was property of the estate and conditionally denied the motion for relief on the basis of the following:

> (1) Debtors shall at all times provide proof of insurance on the collateral in accordance with the contractual agreement between the parties;
>
> (2) Debtors shall comply with the payments required to be made to the Trustee in their Chapter 13 plan as the same may be amended from time to time; and
>
> (3) upon written notification to the Chapter 13 Trustee by Honda that the collateral has been turned over to the Debtors, the Trustee shall make monthly disbursements to Honda preconfirmation in accordance with Debtors' plan as the same may be amended from time to time. See Littleton at 716.

The above factors indicate that as long as the debtor provides proof of the contractually required insurance and provides for treatment of the debt through the Chapter 13 plan, the creditor is adequately protected and must turnover the possessed collateral. Applying the requirements to the instant case, Mr. Ballard's proposed plan shows that the debt owed to Freedom is to be paid in full over a 60 month period at a 6.5% interest rate. Because the debt is provided for in the plan, the first prong of the adequate protection test is satisfied.

The second requirement is to provide contractually required insurance. The contract states that "The Pledgor must agree to maintain liability and casualty insurance with respect to such motor vehicle." The proof of insurance did not have the creditor listed as loss payee; however, the contract clearly does not require this. The proof of

insurance provided on September 7, 2010 is thus able to satisfy the second requirement for adequate protection. As both requirements are met, the creditor is adequately protected.

### C. Damages

Section 362(a)(3) operates "as a stay of any act to obtain possession of property of the estate or of propery from the estate or to exercise control over property of the estate." Section 362(k)(1) states that: "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

In <u>Knaus v. Concordia Lumber Co.</u>, the 8th Circuit determined that a failure to turnover property of the estate constituted a stay violation. 889 F.2d 773 (8th Cir. 1989). In <u>Knaus</u>, the debtor purchased merchandise from a lumber company. The debtor subsequently defaulted on its obligation to the lumber company. The creditor proceeded to obtain a judgment and writ under which the sheriff seized the equipment. Prior to the creditor's disposition of the equipment, the debtor filed for protection under Chapter 11 of the bankruptcy code, and the debtor's attorney demanded return of the equipment. The bankruptcy court held that the creditor violated the stay by not returning the equipment. The creditor appealed to the district court, which reversed the bankruptcy court. The Court of Appeals then reversed the district court decision and reinstated the holding of the bankruptcy court. The <u>Knaus</u> court held as follows:

> The duty to turnover property is not contingent upon any predicate violation of the stay, any order of the bankruptcy court or any demand by the creditor. Rather, the duty arises upon filing of the bankruptcy petition.

> The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to exercise control over property of the estate." See Knaus at 775.

This court concurs with the 8th Circuit in finding that when a creditor possesses property of the estate and refuses to turn the property over after the filing of the bankruptcy, the automatic stay has been violated. The court must now determine whether the violation was willful in order to recover actual damages. In Jove Eng'g Inc. v. I.R.S., the 11th Circuit formulated a two prong test to determine if a creditor's conduct in violating the stay was willful. 92 F.3d 1539 (11th Cir. 1996). If the creditor knew the automatic stay was invoked and intended the actions which violated the stay, the conduct is deemed willful. The debtor has the burden of providing the creditor with actual notice. Where a party has actual knowledge of the bankruptcy, and despite such knowledge intentionally undertakes actions which violate the stay, the party's ignorance of the legal effect of the stay is no defense. See Spinner v. Cash in a Hurry, 398 B.R. 84 (Bankr. N.D. Ga. 2008) *quoting* In re Manuel, 212 B.R. 517 (Bankr. E.D. Va. 1997), In re Peterkin, 102 B.R. 50 (Bankr. E.D.N.C. 1989).

The first prong of the test involves knowledge of the bankruptcy. At the hearing, Freedom's representative testified that he had knowledge of the bankruptcy in early September. Furthermore, Mr. Ballard's counsel sent notice of the bankruptcy by fax and phone to the creditor on September 7, 2010. Based on the testimony of the creditor and the fax by Mr. Ballard's counsel, the first prong of the test is satisfied.

The second prong of the test involves a creditor intentionally undertaking an action which violated the stay. In the instant case, the creditor had possession of the

vehicle at the time of the bankruptcy filing. After Mr. Ballard's counsel notified creditor of the bankruptcy and forwarded proof of insurance, the creditor refused to return any phone calls. The first time that creditor contacted debtor's counsel was two days prior to the turnover hearing. Despite knowledge of the bankruptcy, the creditor refused to release the truck. To date, the creditor has still refused to release the vehicle. Furthermore, creditor has never filed a motion for relief from the automatic stay, even though the vehicle remains property of the estate. This behavior clearly fits within the 11th Circuit's second prong of willful conduct.

The actual damages incurred by the debtor include attorney's fees and loss of income due to the creditor's refusal to turnover the vehicle. The evidence offered provides that the debtor has incurred attorney's fees in the amount of $2,152.50. At the turnover hearing, debtor testified that the income lost by the creditor's refusal to turnover the truck was between $300 and $400 per week. Calculating the damages from the lowest estimate of $300 per week from September 7, 2010, the court arrives at $1400 in damages from lost income. The court does not find that the creditor's actions were so egregious as to warrant punitive damages. Accordingly, the creditor shall turnover the 1996 International truck to the debtor and pay $3,552.50 in actual damages. An order in accordance with this memorandum opinion shall be entered.